## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHAEL ADRIAN,  
    Plaintiff

    vs

COMMISSIONER OF  
SOCIAL SECURITY,  
    Defendant

Case No. 1:10-cv-237  
Dlott, J.  
Litkovitz, M.J.

**REPORT AND**  
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response in

opposition (Doc. 13), and plaintiff's reply memorandum. (Doc. 16).

### PROCEDURAL BACKGROUND

Plaintiff was 43 years old at the time of the administrative law judge's (ALJ) hearing. He

has a twelfth grade education and past relevant work as a factory laborer, retail stocker, fast food

worker, and bus driver. Plaintiff filed applications for DIB and SSI in February 2006, alleging an

onset date of disability of June 7, 2005, due to diabetes, high blood pressure, arthritis,

neuropathy, irregular heartbeat, and high cholesterol. (Tr. 67). Plaintiff's applications were

denied initially and upon reconsideration. Plaintiff then requested and was granted a de novo

hearing before an ALJ. On January 15, 2009, plaintiff, who was represented by counsel,

appeared and testified at a hearing before ALJ Samuel Rodner. A vocational expert (VE) also

appeared and testified at the hearing.

On February 13, 2009, the ALJ issued a decision denying plaintiff's DIB and SSI applications. The ALJ determined that plaintiff suffers from the following severe impairments: non-insulin dependent diabetes mellitus, bilateral shoulder pain, and neck pain. (Tr. 16). The ALJ found that plaintiff's impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 17). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c)[1] except that plaintiff is limited to reaching overhead frequently; he cannot climb ladders, ropes, or scaffolds; and he should avoid concentrated exposure to unprotected heights and hazardous machinery. (Tr. 18). The ALJ determined that plaintiff is able to perform his past relevant work as a stocker/cashier. (Tr. 20). Accordingly, the ALJ concluded that plaintiff is not disabled under the Act. (Tr. 20).

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing

---

[1]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

*Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C. §§ 416(i), 423.  Establishment of a disability is contingent upon two findings.  First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  Eligibility is dependent upon disability, income, and other financial resources.  20 C.F.R. § 416.202.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. § 404.1520.  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends.  Third, if the individual has a severe impairment, the Commissioner must

3

compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  If

the impairment meets or equals any within the Listing, disability is presumed and benefits are

awarded.  20 C.F.R. § 404.1520(d).  Fourth, if the individual's impairments do not meet or equal

those in the Listing, the Commissioner must determine whether the impairments prevent the

performance of the individual's regular previous employment.  If the individual is unable to

perform the relevant past work, then a prima facie case of disability is established and the burden

of going forward with the evidence shifts to the Commissioner to show that there is work in the

national economy which the individual can perform.  *Lashley v. Secretary of H.H.S.*, 708 F.2d

1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981).

　　　Plaintiff has the burden of proof at the first five steps of the sequential evaluation process.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).  Once plaintiff

establishes a prima facie case by showing an inability to perform the relevant previous

employment, the burden shifts to the Commissioner to show that plaintiff can perform other

substantial gainful employment and that such employment exists in the national economy.

*Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born v. Secretary of Health and Human

Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990).  To rebut a prima facie case, the Commissioner

must come forward with particularized proof of plaintiff's individual capacity to perform

alternate work considering plaintiff's age, education, and background, as well as the job

requirements.  *Wilson*, 378 F.3d at 548.  *See also Richardson v. Secretary of Health & Human

Services*, 735 F.2d 962, 964 (6th Cir. 1984).  Alternatively, in certain instances the

Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut

4

plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *Wilson*, 378 F.3d at 548.

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In addition to the objective medical evidence, the Commissioner must consider other evidence of pain, such as statements or reports from plaintiff, plaintiff's treating physicians and others about plaintiff's prescribed treatment, daily activities, and efforts to work, as well as statements as to how plaintiff's pain affects his daily activities and ability to work. *Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994) (citing 20 C.F.R. § 404.1529(a)). Specific factors relevant to plaintiff's allegations of pain include his daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes; treatment other than medication plaintiff has received for relief of his pain; any measures plaintiff uses to relieve his pain; and other factors concerning his functional limitations and restrictions due to pain. *Id.*; 20 C.F.R. § 404.1529(a). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish that he is disabled, *Duncan,* 801 F.2d. at 853, statements about his pain or other symptoms are not sufficient to prove his

disability.  20 C.F.R. § 404.1529(a).  The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id.*

Where the medical evidence is consistent and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984).  Where, however, there is both substantially conflicting medical evidence as well as substantial evidence supporting a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.  The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043, 1990 WL 94 (6th Cir. Jan. 2, 1990).  Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined

6

effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id. See also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 8 at 3-5, Doc. 13 at 2-4) and will not be repeated here. Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff assigns two errors in this case: (1) the ALJ improperly failed to find severe diabetic neuropathy and sleep apnea; and (2) the ALJ erred by finding plaintiff is capable of performing medium work.

## I. The ALJ's finding that plaintiff's diabetic neuropathy and sleep apnea are not severe impairments is supported by substantial evidence.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit,

lift, push, pull, reach, carry or handle. *See* 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Basic

work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the

ability to perform physical functions, the capacity for seeing and hearing, and the ability to use

judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §

404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential

evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff

must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of

H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if

it is a "slight abnormality which has such minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education, and

work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v.

Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle"

in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See

also Rogers v. Commissioner*, 486 F.3d 234, 243 n.2 (6th Cir. 2007).

     The ALJ determined that plaintiff's diabetic neuropathy and sleep apnea are not severe

impairments. With respect to the neuropathy, the ALJ noted that in November 2005, Dr. Fuqua

found that vibratory perception could not be determined secondary to inconsistent responses and

that plantar responses were normal. (Tr. 16, citing Tr. 146). The ALJ acknowledged that Dr.

Sagri from the Goshen Family Clinic diagnosed diabetic neuropathy in October 2006, but found

that such diagnosis was primarily based on plaintiff's subjective complaints regarding his feet

and toes. (Tr. 16). The objective findings included only a slight sensory deficit in the glove and

stocking distribution, primarily affecting plaintiff's feet, while plaintiff's gait was normal and

8

there were no calluses or ulcers. (Tr. 17, citing Tr. 194). The ALJ also noted that plaintiff's

peripheral circulation, including dorsalis pedis and posterior tibial pulses, was normal. Although

there was a patch of vitiligo[2] on plaintiff's left forefoot, the ALJ noted this was the only time this

was found. *Id.* The ALJ noted there were no other objective signs of neuropathy, either from

clinical evaluations or laboratory testing. *Id.* The ALJ concluded there was no substantial

evidence of neuropathy as a severe impairment.

Plaintiff contends the ALJ erred when he determined that plaintiff's diabetic neuropathy

is not a severe impairment. In support of his argument, plaintiff cites to his "often uncontrolled"

diabetes (Doc. 8 at 6, citing Tr. 194) and complaints of pain, numbness/tingling, and loss of

sensation and weakness in his legs and hands, which he asserts are the "hallmark complaints of

diabetic neuropathy." (Doc. 8 at 6-7, citing Tr. 145, 147, 175, 194, 196-98).

A careful review of plaintiff's record citations fails to support his contention that the ALJ

erred by not finding diabetic neuropathy to be a severe impairment. At his November 2005 visit

with Dr. Fuqua, plaintiff complained of "severe pain right hand MP joints *recently once*" (Tr.

145) (emphasis added), but he did not complain of any pain, tingling, or problems with his feet.

In May 2006, plaintiff complained of pain in his neck, shoulders, back and elbow to Dr. Surber,

the consultative examiner. (Tr. 147). However, plaintiff did not complain of pain or tingling in

his feet or hands during that examination as he now alleges. Moreover, Dr. Surber's physical

examination revealed plaintiff had full and unlimited range of motion of his ankles, wrists, hands

and fingers, and no areas of decreased sensation to light touch in either his hands or feet. (Tr.

---

[2]"Vitiligo is a skin condition in which there is a loss of brown color (pigment) from areas of skin, resulting in irregular white patches that feel like normal skin." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001834/ (last accessed on May 23, 2011).

149). Dr. Surber noted that plaintiff was able to perform the straightaway, tandem, and heel/toe walks, with no evident difficulties or limitations. Nor did plaintiff exhibit any type of limping or antalgic gait. (Tr. 150). In October 2006, plaintiff complained of "some" tingling and numbness in his toes and that the "soles of his feet hurt sometimes because of a burning sensation." (Tr. 194). Yet, plaintiff also reported that he was walking three times a week for exercise and additionally had been walking "2 to 3 miles a day at least" because he did not have a car. (Tr. 195). The ALJ reasonably considered this evidence as inconsistent with a claimed inability to walk or stand for prolonged periods due to foot pain. (Tr. 19). While the August 2007 note from the Goshen Family Clinic does reflect complaints of increased foot pain and tingling and numbness in plaintiff's hands (Tr. 175), the other records cited by plaintiff fail to support his claim of a severe impairment of diabetic neuropathy.

Plaintiff also cites to the Functional Capacity Evaluation (FCE) performed on January 24, 2008, by a physical therapist who found diminished sensation in plaintiff's hands and feet. (Tr. 196-98). The ALJ gave no weight to the FCE for several reasons. First, the ALJ correctly noted that the physical therapist is not an acceptable medical source under the Social Security regulations. *Compare* 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists), with 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 1513(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists are considered to be "other sources" rather than "acceptable medical sources"). *See also Nierzwick v. Commissioner of Social Security*, 7 F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because therapist not

10

recognized as an acceptable medical source); *Jamison v. Commissioner*, No. 1:07-cv-152, 2008 WL 2795740, at *10 (S.D. Ohio July 18, 2008) (Dlott, J.) (same). Because physical therapists are not considered acceptable medical sources under the regulations, the ALJ was not required to give any special deference to the therapist's functional capacity evaluation.

Second, the ALJ articulated good reasons for discounting the therapist's findings. The ALJ determined that the therapist's clinical signs were markedly inconsistent with the objective evidence from acceptable medical sources. (Tr. 19). The ALJ noted that while the therapist found decreased manual motor testing in nearly all areas, there is no objective evidence to explain decreased motor testing in plaintiff's neck, elbows, wrists, grip, abdominals, lumbar extensor, hips, knees, and ankles. *Id.* The ALJ further noted that the therapist failed to state whether plaintiff gave adequate effort on manual motor testing and failed to use objective testing to gauge the validity of plaintiff's efforts. *Id.* Therefore, the ALJ's decision to not accord significant weight to the therapist's FCE is substantially supported by the record.

Plaintiff also cites to the Goshen Family Clinic records in support of his assertion that his diabetic neuropathy is a severe impairment. (Doc. 8 at 7, citing Tr. 164-195, 199-210). Plaintiff fails to direct the Court's attention to the specific records within this range of records that support his contention that diabetic neuropathy imposed significant limitations on his ability to perform basic work activities. The more recent records covering March 2008 to October 2008 from the Goshen Family Clinic (Tr. 199-210) do not appear to reflect any complaints of pain, numbness or tingling in plaintiff's hands or feet. Moreover, the records indicate that plaintiff's "neuropathy [is] controlled with Neurontin." (Tr. 202). While plaintiff faults the ALJ for allegedly focusing on evidence from 2005 to 2006 to the exclusion of the FCE and the Goshen Family Practice

11

notes which cover plaintiff's treatment from 2006 to 2008, plaintiff has failed to identify the specific record evidence that actually supports his argument. Thus, the ALJ's finding that diabetic neuropathy is not a severe impairment is substantially supported by the record in this case.

Plaintiff also argues the ALJ erred by not finding his sleep apnea to be a severe impairment. On January 8, 2009, one week before the ALJ hearing, plaintiff was diagnosed with severe obstructive sleep apnea. (Tr. 211-212). Plaintiff argues this is a significant condition that would cause weakness, decreased stamina, and environmental restrictions. (Doc. 8 at 7-8). Plaintiff argues that the record is "replete" with his complaints of fatigue before the 2009 test and that such complaints confirm his condition. (Doc. 8 at 8, citing Tr. 147, 194). Plaintiff also contends the ALJ's imposition of environmental restrictions in his RFC to accommodate plaintiff's sleep apnea contradicts the non-severity finding.

Plaintiff's two record citations showing complaints of fatigue in May 2006 and October 2006 (Tr. 147, 194) do not establish that his fatigue was persistent over the relevant time period or that his fatigue was likely related to sleep apnea as opposed to some other condition. The ALJ reasonably concluded that there was simply insufficient record evidence showing that sleep apnea was a severe impairment given the recent diagnosis. As the ALJ reasonably determined, plaintiff had yet to be tested and fitted with a CPAP device, and it was premature to conclude that this condition would continue to be severe with the use of a CPAP or BIPAP device. (Tr. 17). Plaintiff has not cited to any other evidence showing a connection between his January 2009 diagnosis of sleep apnea and any other alleged symptoms showing that sleep apnea was a severe impairment.

Plaintiff also argues that the ALJ's inclusion of environmental restrictions in the RFC to accommodate plaintiff's sleep apnea is inconsistent with the ALJ's finding that sleep apnea is not a severe impairment. To the contrary, the ALJ properly considered plaintiff's severe and non-severe impairments in assessing plaintiff's RFC. Under the Social Security Regulations, once the ALJ determines a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps of the sequential evaluation process. 20 C.F.R. § 404.1545(e). If an ALJ considers all of a claimant's impairments (both severe and non-severe) in determining the claimant's RFC, the ALJ's failure to characterize additional impairments as "severe" is not reversible error. *See Glenn v. Astrue,* No. 3:09-cv-296, 2010 WL 4053548, at *14 (S.D. Ohio Aug. 13, 2010) (citing *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Thus, the ALJ's inclusion of environmental restrictions in plaintiff's RFC was not inconsistent with his severity finding.

Plaintiff essentially argues that the ALJ erred in his severity findings because plaintiff has been diagnosed with diabetic neuropathy and sleep apnea. Contrary to plaintiff's assertion, these diagnoses alone are insufficient to establish their severity at Step Two of the sequential evaluation process. Plaintiff was required to present evidence showing these impairments significantly limited his ability to do basic work activities. 20 C.F.R. § 404.1520(c). As explained above, the ALJ reasonably determined that plaintiff's subjective allegations are not persuasive evidence of a severe impairment. *See* 20 C.F.R. §§ 404.1508 (impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, and not solely by claimant's statement of symptoms); 404.1528(a) (claimant's own description of impairment is not enough to establish existence of that impairment). Accordingly, the ALJ's

13

finding that plaintiff's diabetic neuropathy and sleep apnea do not constitute severe impairments is substantially supported by the record and should be affirmed.

## II. The ALJ's RFC assessment is not supported by substantial evidence.

A claimant's "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. Social Security Ruling 96-8p requires that the ALJ's RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)."

Plaintiff contends the ALJ's RFC finding for a range of medium work is not supported by substantial evidence. Plaintiff asserts that the ALJ improperly relied on the non-examining state agency doctor's RFC for medium work when that opinion, rendered in May 2006, did not consider the post-2006 evidence, including the November 2007 MRI of plaintiff's shoulders showing bilateral rotator cuff tears (Tr. 158), the diagnosis of adhesive capsulitis of both shoulders (Tr. 163), the orthopedic surgeon's recommendation for bilateral shoulder manipulation under anesthesia (Tr. 163), and the January 2008 FCE. (Tr. 196-98).

As discussed above, the ALJ was permitted to discount the FCE report of the physical therapist as that opinion was not made by an acceptable medical source and was unsupported for the reasons stated by the ALJ. Nevertheless, the ALJ's finding that plaintiff has the RFC to lift up to 50 pounds occasionally and 25 pounds frequently is without substantial support in the record because it fails to account for the post-May 2006 evidence of record.

14

In this case, the ALJ relied on the non-examining state agency physician's opinion that plaintiff had an RFC for a range of medium work. (Tr. 20, 153). That opinion was provided in May 2006 and is based primarily on Dr. Surber's reported findings from his consultative examination of plaintiff conducted that same month. The state agency doctor noted Dr. Surber's findings of flexion of 90 degrees, right shoulder abduction of 110 degrees, and left shoulder abduction of 120 degrees. (Tr. 149, 157). Dr. Surber opined that based on his exam, plaintiff "would be able to frequently lift or carry at least 10 to 35 pounds during up to one-third to two-thirds of an eight-hour work day." (Tr. 151).

Neither Dr. Surber nor the non-examining state agency doctor had the benefit of the November 2007 MRI reports, which revealed "supraspinatus and subscapularis tendinosis/partial tear" in the left shoulder and "supraspinatus tendon partial tear" and "low lying acromion with acromioclavicular degenerative change" in the right shoulder. (Tr. 158-159). Based on his review of the MRI findings along with his physical examination of plaintiff which showed both right and left should abduction of 80 degrees, Dr. Favorito, an orthopedic surgeon, diagnosed bilateral shoulder adhesive capsulitis. (Tr. 162-63). Dr. Favorito stated, "We feel that physical therapy would not really get us where we need to be with his range of motion, since this has been going on for so long. We will schedule him for bilateral manipulation under anesthesia of his shoulders in the operating room." (Tr. 163).[3]

---

[3]Plaintiff testified he did not undergo this surgical procedure as his physician said it was contraindicated because of his diabetes. (Tr. 246). A November 26, 2007 progress note from the Goshen Family Clinic confirms that plaintiff discussed the risks and benefits of surgery with his physician and declined to undergo surgery. (Tr. 169).

15

While the ALJ initially noted the MRI findings in his decision (Tr. 18), he appears to rely solely on the pre-MRI findings for the RFC lifting and carrying restrictions. The ALJ noted Dr. Surber's May 2006 findings of "slightly diminished range of motion of right shoulder motion" and "normal range of motion otherwise" and Dr. Surber's opinion that plaintiff "could lift and carry 'at least' 10-35 pounds. . . ." (Tr. 18-19). The ALJ stated that Dr. Sagri's (Goshen Family Clinic) October 2006 musculoskeletal findings were similar to those of Dr. Surber. (Tr. 19). The ALJ's only reference to Dr. Favorito's report is his statement, "Other records confirm the claimant has some difficulty raising his arms (see Dr. Favorito's note dated 11/12/2007, 6F/s, for example)." (Tr. 19).

The ALJ does not discuss Dr. Favorito's November 2007 objective findings on examination showing abduction was greatly reduced from the time of Dr. Surber's May 2006 exam (abduction at 80 degrees in comparison with Dr. Surber's finding of 120 degrees), nor Dr. Favorito's opinion that plaintiff needed surgical manipulation of his shoulders because physical therapy would not be helpful. The ALJ did not acknowledge plaintiff's diagnosis of bilateral adhesive capsulitis following the 2007 MRI nor address how plaintiff's bilateral adhesive capsulitis might affect his ability to lift, carry, push or pull weight. "[A]dhesive capsulitis is a specific diagnosis that reflects a 'serious clinical finding,' which is caused by sticking of the shoulder capsule to the humeral head that is painful and results in a 'global decrease in shoulder range of motion.'" *Cochrane v. Astrue*, No. 08 C 2906, 2009 WL 5173496, at *8 (N.D. Ill. Dec. 30, 2009) (citation omitted). Progress notes from the Goshen Family Clinic in 2007 and 2008 confirm that plaintiff's shoulder impairment appeared to worsen from the time of Dr. Surber's May 2006 examination and continued to be a significant problem. The notes reflect persistent

16

complaints of pain and clinical findings of limitation of motion (Tr. 169, 172, 173, 175, 176, 184, 189-90, 191), as well as right shoulder abduction measurements ranging from 75 degrees (Tr. 173) to 90 degrees (Tr. 190, 192). The Court notes that Dr. Surber, the consultative examiner, is a family practice physician, while Dr. Favorito is a specialist in orthopedic surgery. Yet, the ALJ failed to acknowledge Dr. Favorito's medical specialty in assessing his opinion as required under the regulations. *See* 20 C.F.R. § 404.1527(d). The Court is unable to discern from the ALJ's brief mention of the orthopedic surgeon's report and MRI findings whether the ALJ fully considered the objective evidence confirming plaintiff's diagnosis of bilateral adhesive capsulitis and the clinical findings showing a worsening of plaintiff's shoulder condition, both of which strongly suggest the imposition of greater lifting and carrying restrictions than those found by the ALJ.

It is the ALJ's function to determine a plaintiff's RFC based on the record as a whole. 20 C.F.R. § 404.1546. Here, it appears the ALJ failed to consider the significance of the more recent objective and clinical findings of plaintiff's severe bilateral shoulder impairment and erroneously focused on the 2006 medical evidence to the exclusion of the 2007 and 2008 evidence. The Court finds the ALJ's RFC decision is not supported by substantial evidence in this regard and should be reversed and remanded for further proceedings.

**III. This matter should be reversed and remanded for further proceedings.**

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176. On remand the ALJ

17

should obtain additional evidence on the extent to which plaintiff's bilateral adhesive capsulitis, in combination with his other impairments, limits his ability to function for purposes of determining plaintiff's RFC.

### IT IS THEREFORE RECOMMENDED THAT:

This case be REVERSED and REMANDED for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 6/1/2011

Karen L. Litkovitz
United States Magistrate Judge

18

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHAEL ADRIAN,                                    Case No. 1:10-cv-237
     Plaintiff                                Dlott, J.
                                                   Litkovitz, M.J.

   vs

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant


### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

19